[Docket No. 24]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| BRIAN SHIELDS,<br><br>    Plaintiff,<br><br>        v.<br><br>PENNS GROVE-CARNEYS POINT REGIONAL SCHOOL DISTRICT, et al.,<br><br>    Defendants. | Civil No. 14-2106 (RMB/JS)<br><br>**OPINION** |

APPEARANCES:

Katherine Charbonnier Oeltjen
Console Law Offices
110 Marter Avenue, Suite 105
Moorestown, NJ 08057

Laura C. Mattiacci
Console Law Offices
1525 Locust Street, 9th Floor
Philadelphia, PA 19102
    *Attorneys for Plaintiff*

Michael Paul Madden
Timothy R. Bieg
Madden & Madden
108 Kings Highway East, Suite 200
P.O. Box 210
Haddonfield, NJ 08033-0389
    *Attorneys for Defendants*

**BUMB,** UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon the motion for summary judgment filed by Defendants Penns Grove-Carneys Point

Regional School District, Penns Grove-Carneys Point Board of Education (together, the "Defendants"), and Gregory T. Wright [Docket No. 24].[1]  For the reasons set forth below, the motion for summary judgment shall be denied.

I.   **FACTUAL BACKGROUND**

This dispute stems from the decision made by the Penns Grove-Carneys Point Board of Education (the "Board") at an August 12, 2013 meeting not to hire Plaintiff Brian Shields for the position of elementary school teacher at the Field Street School.

In approximately July 2013, the Plaintiff applied to be an elementary school teacher at the Field Street School.  Shields Dep. Tr. 30:1-5 [Docket No. 31-2, Exhibit A].  A committee that included the school principal, Ms. Mary Kwiatkowski, selected and interviewed several candidates, including the Plaintiff. Kwiatkowski Dep. Tr. 8:8-15 [Docket No. 31-2, Exhibit D]; August 1, 2013 Letter [Docket No. 31-4, Exhibit N].  The committee

---

[1] Gregory T. Wright and the John Doe Defendants have since been dismissed by a stipulation signed by all parties pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii) [Docket No. 27]. It is also unclear to the Court whether Defendants Penns Grove-Carneys Point Regional School District and Penns Grove-Carneys Point Board of Education are separate and distinct entities, given the language in the stipulation, which describes the remaining Defendants as "the Penns Grove-Carneys Point Regional School District, also referred to as the Penns Grove-Carneys Point Board of Education."  Id.  The parties will need to clarify this issue.

recommended the Plaintiff specifically for the elementary school special education position. Kwiatkowski Dep. Tr. 7:23-8:2. The Plaintiff was then interviewed by the Superintendent, Dr. Joseph Massare. Dr. Massare was impressed by the Plaintiff and indicated that he would recommend the Plaintiff to the Board of Education. Massare Dep. Tr. 26:10-27:14 [Docket No. 31-2, Exhibit E]. Dr. Massare explained to the Plaintiff that, although the Board would make the final decision on whether or not to hire the Plaintiff, he "was 99.9 percent sure that [the Plaintiff] would be hired at that board meeting, simply because that has been [his] record with the current school board" during his eleven years as the Superintendent. Id. at 34:2-11. After his interview with Dr. Massare, the Plaintiff resigned from his teaching position at another school. Shields Dep. Tr. 63:4-11.

On August 12, 2013, the Board met to vote on a number of personnel issues, including whether to hire the Plaintiff. The meeting began with the Executive Session, which is closed to the public. Plaintiff's Statement of Facts ("PSOF") [Docket No. 31-7] ¶ 38. Dr. Massare and the Board members reviewed the agenda for the meeting, including the vote on whether to hire the Plaintiff. Massare Dep. Tr. 28:7-20. During the Executive Session, Dr. Massare recommended the Plaintiff to the Board for hiring. Defendants' Statement of Facts ("DSOF") [Docket No. 24-2] ¶ 28. The Board also discussed concerns over "local people

3

[] not being hired, particular those that the Board had paid for their education." August 12, 2013 Executive Session Minutes [Docket No. 24-2, Exhibit G]. According to Dr. Massare, during the closed portion of the meeting, the Board appeared to be in favor of hiring the Plaintiff. Massare Dep. Tr. 54:1-4, 136:14-137:8.

The Board then considered the candidates, including the Plaintiff, in a public session, during which members of the public are permitted to make statements to the Board. DSOF ¶ 31. During this public session, a community activist, Walter Hudson, and others accused the Board of not hiring enough minorities for teaching positions. PSOF ¶ 43; DSOF ¶ 31. Dr. Massare and Ms. Debra Bradford, a Board member, testified that Mr. Hudson specifically urged the Board to vote against the Plaintiff and Ms. Jaime Kirkpatrick, another Caucasian individual seeking a teaching position at the Field Street School. Massare Dep. Tr. 52:22-53:10, 143:13-17; Bradford Dep. Tr. 17:1-10 [Docket No. 31-3, Exhibit G]. Mr. Hudson and his followers had made similar accusations at previous Board meetings, but, according to Ms. Kwiatkowski, had never before recommended against specific teaching candidates. PSOF ¶¶ 45, 52. All other personnel matters on the agenda for the Board meeting were voluntary transfers of individuals already employed

4

by the School District. August 12, 2013 Meeting Minutes [Docket No. 24-2, Exhibit F].

Ultimately, the Board voted against hiring the Plaintiff and Ms. Kirkpatrick. Id. Only one Board member, Mrs. Jeannette Harbeson, voted in favor of hiring the Plaintiff, while the remaining seven Board members voted against. Id. After the vote, Dr. Massare called the Plaintiff and informed him that the Board had voted against hiring him because he was Caucasian. Shields Dep. Tr. 56:12-57:19. Ms. Bradford testified at her deposition that the fact that the Plaintiff is white played a role in her decision to vote against hiring him. Bradford Dep. Tr. 41:5-12.

The Board was unable to fill the two elementary school teacher positions by the beginning of the school year. Instead, substitute teachers fulfilled these roles. Kwiatkowski Dep. Tr. 20:12-21:13. A Caucasian woman who did not live in the District, but who had previously taught at a different school in the District, was eventually hired for the position of special education elementary school teacher at the Field Street School. DSOF ¶¶ 41-42; Massare Dep. Tr. 72:9-19.

On April 3, 2014, based on the Board's decision not to hire him for allegedly discriminatory reasons, the Plaintiff filed a complaint against Penns Grove-Carneys Point Regional School District, Penns Grove-Carneys Point Board of Education, Gregory

5

T. Wright, and several John Doe Defendants [Docket No. 1]. The Plaintiff voluntarily dismissed his claims against Mr. Wright and the John Doe Defendants by stipulation on August 13, 2015 [Docket No. 27]. After extensive discovery, including the depositions of the Board members, Dr. Massare, and the Plaintiff, the Defendants moved for summary judgment [Docket No. 24].

II.   **SUMMARY JUDGMENT STANDARD**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it will "affect the outcome of the suit under the governing law[.]" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" if it could lead a "reasonable jury [to] return a verdict for the nonmoving party." Id.

When deciding the existence of a genuine dispute of material fact, a court's role is not to weigh the evidence; all reasonable "inferences, doubts, and issues of credibility should be resolved against the moving party." Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir. 1983). However, a mere "scintilla of evidence," without more, will not give rise to a genuine dispute for trial. Anderson, 477 U.S. at 252. Further, a court need not adopt the version of facts asserted by the

6

nonmoving party if those facts are "utterly discredited by the record [such] that no reasonable jury" could believe them. Scott v. Harris, 550 U.S. 373, 380 (2007). In the face of such evidence, summary judgment is still appropriate "where the record . . . could not lead a rational trier of fact to find for the nonmoving party[.]" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Then, "when a properly supported motion for summary judgment [has been] made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" Anderson, 477 U.S. at 250 (citing Fed. R. Civ. P. 56(e)).  The non-movant's burden is rigorous: it "must point to concrete evidence in the record"; mere allegations, conclusions, conjecture, and speculation will not defeat summary judgment. Orsatti v. N.J. State Police, 71 F.3d 480, 484 (3d Cir. 1995); accord Jackson v. Danberg, 594 F.3d 210, 227 (3d Cir. 2010) (citing Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d

7

199, 228 (3d Cir. 2009) ("[S]peculation and conjecture may not defeat summary judgment.")).

### III. **ANALYSIS**

The Plaintiff alleges that the Defendants illegally discriminated against him due to his race. He asserts claims under Section 1981 of the Civil Rights Act (Count I), Section 1983 of the Civil Rights Act (Count II), the New Jersey Civil Rights Act (Count III), and the New Jersey Law Against Discrimination ("NJLAD") (Count IV).

As an initial matter, the Court observes that "[s]ummary judgment is to be used sparingly in employment discrimination cases[.]" Doe v. C.A.R.S. Protection Plus, Inc. 527 F.3d 358, 369 (3d Cir. 2008). "[T]he plaintiff's burden at this stage is not particularly onerous." Id. The Third Circuit has also advised that, "[i]n an employment discrimination case a trial court must be cautious about granting summary judgment to an employer when, as here, its intent is at issue." Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 321 (3d Cir. 2000) (internal citations and quotations omitted).

#### A. **Municipal Liability**

The Defendants contend that the "Court can spend short shrift with plaintiff's federal claims against the District" because the "Plaintiff has failed to produce even the slightest of evidence that the District maintained an unconstitutional

8

custom, policy or practice, with deliberate indifference to the rights of plaintiff," as required to establish municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).  Motion at 14 [Docket No. 24-1].

"A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior."  Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (citing Monell, 436 U.S. at 691).  For municipal liability under Section 1983, the Plaintiff must demonstrate that a municipal policy or custom was the "moving force" behind the constitutional tort of one its employees.  Id. at 222 (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991) (quoting Polk Cty. v. Dodson, 454 U.S. 312, 326 (1981)).  Monell also establishes that actions undertaken directly by municipal subdivisions, such as boards of education, "unquestionably involve[] official policy."  Monell, 436 U.S. at 694 (holding that policy of Department of Social Services and the City of New York Board of Education involves official policy).

"[A] municipality may be liable under § 1983 for a single decision by its properly constituted legislative body--whether or not that body had taken similar action in the past or intended to do so in the future--because even a single decision by such a body unquestionably constitutes an act of official

9

government policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986); accord Langford v. City of Atlantic City, 235 F.3d 845, 848 (3d Cir. 2000). The Third Circuit has reiterated that "[t]he Supreme Court's decision in Pembaur makes clear that an official with policymaking authority can create official policy, even by rendering a single decision." McGreevy v. Stroup, 413 F.3d 359, 367-68 (3d Cir. 2005). Municipal liability may only be imposed "where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." Pembaur, 475 U.S. at 481. "Accordingly, even one decision by a school [board], if [it] were a final policymaker, would render [its] decision district policy." McGreevy, 413 F.3d at 368; accord Ecotone Farm LLC v. Ward, 2016 WL 335837, at *7 (3d Cir. Jan. 28, 2016) ("An official has final policy-making authority, and can thus bind the municipality by his conduct if the official is responsible for making policy in the particular area of municipal business in question and the official's authority to make policy in that area is final and unreviewable.") (emphasis in original) (internal citations, quotations, and modifications omitted).

Whether an official or entity is a final policymaker is a question of state law. Ecotone, 2016 WL 335837, at *7; McGreevy, 413 F.3d at 368. Under New Jersey law, "[n]o teaching staff member shall be appointed, except by a recorded roll call

10

majority vote of the full membership of the board of education appointing him." N.J.S.A. 18A:27-1. Therefore, as the Defendant Board has "final, unreviewable discretion to make a decision or take action" with regards to hiring teachers, it is considered a policymaker for purposes of this analysis. See Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996); see also Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 250 (3d Cir. 2007) ("Plaintiffs may establish a government policy by showing that a decisionmaker possessing final authority to establish municipal policy with respect to the action issued an official statement of policy.") (internal quotations and modifications omitted) (quoting Pembaur, 475 U.S. at 481).

Accordingly, the Board's decision not to hire the Plaintiff is an act of official government policy and, as such, Monell does not bar the Plaintiff's federal civil rights claims against either Defendant.

**B. "Reverse" Discrimination Claims**

The Court now turns to the substance of the Plaintiff's claims. For the reasons set forth below, the Court finds that there are genuine disputes of material fact precluding summary judgment as to whether the Defendants unlawfully discriminated against the Plaintiff because of his race, in violation of Sections 1981 and 1983 of the Civil Rights Act (Counts I and II), the New Jersey Civil Rights Act (Count III), and the NJLAD

11

(Count IV).  "This district has repeatedly interpreted [the New Jersey Civil Rights Act] analogously to § 1983." Pettit v. New Jersey, 2011 WL 1325614, at *3 (D.N.J. Mar. 30, 2011) (collecting cases); accord Borden v. Sch. Dist. of Twp. of E. Brunswick, 523 F.3d 153, n. 5 (3d Cir. 2008).  Likewise, NJLAD claims are "evaluated using the familiar three-step, burden-shifting framework articulated in McDonnell Douglas Corp. v. Green[.]"  Arenas v. L'Oreal USA Products, Inc., 461 F. App'x 131, 133 (3d Cir. 2012).  For these reasons, the Court considers all four claims together.

The Court will set forth its detailed analysis below.  Put plainly, however, the undisputed evidence indicates that, at the August 12, 2013 meeting, members of the public and the Board members themselves articulated concerns about not hiring enough minorities and about not hiring teachers from within the District.  The Board then voted against hiring the Plaintiff and Ms. Kirkpatrick.  Whether the Board members were persuaded by one or either of these concerns and voted accordingly is clearly disputed and is a question of fact for the jury.  See Iadimarco, 190 F.3d at 165.  As there are genuine issues of material fact regarding the Board's motives in voting against hiring the Plaintiff, the Court finds that summary judgment in favor of the Defendants is inappropriate.  See Goosby, 228 F.3d at 321 (reversing grant of summary judgment in favor of defendants

where there were genuine issues of material fact as to the motives behind adverse employment action taken by employer).

To state a prima facie case of racial discrimination in the employment context, a plaintiff generally must establish "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (quoting McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)).  In the context of a "reverse" discrimination case, to meet the first prong, the plaintiff must "present[] sufficient evidence to allow a fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff less favorably because of his race[.]" Id. at 163 (internal quotations and modifications omitted) (quoting Furnco Const. Corp. v. Waters, 438 U.S. 567, 577 (1978)).

Under the McDonnell Douglas burden-shifting framework, once a plaintiff establishes a prima facie case, the burden then shifts to "the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Iadimarco, 190 F.3d at 157 (quoting McDonnell Douglas, 411 U.S.

13

at 802). "If the employer offers some evidence of a legitimate, nondiscriminatory reason then plaintiff must 'be afforded a fair opportunity to show that [employer's] stated reason for [plaintiff's] rejection was in fact pretext.'" Id. at 157-58 (quoting McDonnell Douglas, 411 U.S. at 804). This burden-shifting analysis "applies with equal force to claims of 'reverse discrimination.'" Id. at 158.

When all inferences drawn from the record are viewed in the light most favorable to the Plaintiff, as they must be on summary judgment, the undisputed facts suggest that the Plaintiff may have been treated less favorably by the Defendants because of his race. The ultimate resolution of this issue is a question of fact for the jury. The Superintendent, Dr. Massare, directly informed the Plaintiff that he had not been approved by the Board because he is Caucasian. Shields Dep. Tr. 56:12-57:19. Dr. Massare also testified under oath that, in his opinion, the Plaintiff would have been hired had he been African-American. Massare Dep. Tr. 16:15-17:8. What's more, when asked if she "specifically remember[ed] race playing a part" in "whether [she was] going to say yes or no to Mr. Shields' hiring," Ms. Bradford, one of the seven Board members to vote against hiring the Plaintiff, testified under oath that she "would have to say yes." Bradford Dep. Tr. 41:5-12. Based on this, a fact finder could reasonably conclude that race

impermissibly played a role in the Board's decision not to hire the Plaintiff. This is sufficient to establish the first prong. Further, as the Defendants do not truly contest that the Plaintiff has established the remaining prongs of a prima facie case, the Court turns to the next step in the McDonnell Douglas analysis.

The Defendants respond that the Plaintiff was not hired because he did not live in the District. This, if believed, may be a legitimate, nondiscriminatory reason for not hiring the Plaintiff. However, the Plaintiff must be given an opportunity to demonstrate that that the Defendants' nondiscriminatory reason is merely pretext. Iadimarco, 190 F.3d at 157-58. A plaintiff can demonstrate pretext and, therefore, withstand a motion for summary judgment by "point[ing] to some evidence, direct or circumstantial, from which a factfinder could reasonably either, (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

Based on the testimony of Dr. Massare and Ms. Bradford, the Court finds that a fact finder could reasonably "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause" of the Board's decision not

15

to hire the Plaintiff.  Id.  Discrimination need not be the "the sole cause for an adverse employment decision."  See Robinson v. City of Philadelphia, 491 F. App'x 295, 299 (3d Cir. 2012). Additionally, two Board members specifically denied, under oath, that they considered the Plaintiff's residence when voting. Bradford Dep. Tr. 45:9-17; Wright Dep. Tr. 43:5-7.  This is further evidence from which a fact finder may reasonably disbelieve the Defendants' articulated nondiscriminatory reason for not hiring the Plaintiff.

For the foregoing reasons, the Defendants' motion for summary judgment as to Counts I, II, III, and IV is denied.

### C. Punitive Damages

The Plaintiff requests an award of punitive damages, in addition to compensatory damages, for the wrongs he allegedly suffered at the hands of the Defendants.  As a preliminary matter, punitive damages may not be awarded under Section 1981 against a "government, government agency or political subdivision."  42 U.S.C. § 1981a(b)(1).  It is also well-established that "municipalities, and more broadly, state and local government entities, are immune from punitive damages" in Section 1983 actions.  Doe v. Cty. of Ctr., PA, 242 F.3d 437, 455 (3d Cir. 2001) (citing City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).  Accordingly, to the extent that

16

the Plaintiff seeks punitive damages against the Defendants under Sections 1981 and 1983, the claims fail.

Punitive damages, however, are recoverable against a public employer under the New Jersey Law Against Discrimination under certain circumstances. See Gares v. Willingboro Twp., 90 F.3d 720, 730 (3d Cir. 1996). To recover punitive damages, a plaintiff must establish: (1) "actual participation in or willful indifference to the wrongful conduct on the part of upper management" and (2) "proof that the offending conduct [is] 'especially egregious.'" Cavuoti v. New Jersey Transit Corp., 161 N.J. 107, 113 (1999) (quoting Rendine v. Pantzer, 141 N.J. 282, 313 (1995)); accord Muzslay v. City of Ocean City, 238 F. App'x 785, 791 (3d Cir. 2007). Since the Defendants concede that "upper management actually participated in plaintiff's termination," the Plaintiff's demand for punitive damages hinges on proof that the Defendants' actions were "especially egregious." Motion at 17. The Defendants contend that there is insufficient evidence to support a finding of egregiousness. While the Court sees little to support punitive damages, the issue of punitive damages is generally a question of fact for the jury. Elmiry v. Wachovia Corp., 2007 WL 4117260, at *16 (D.N.J. Nov. 16, 2007) (quoting Fisher v. Volz, 496 F.2d 333, 347 (3d Cir. 1974)). Therefore, summary judgment is denied

17

without prejudice as to punitive damages.  The Defendants may revisit the issue at trial.

**IV. <u>CONCLUSION</u>**

For the foregoing reasons, the Defendants' motion for summary judgment is DENIED.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

Dated: <u>March 1, 2016</u>